## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RICHARD DENNIS, MICHAEL GLASS, and PORT 22, LLC, on behalf of themselves and all others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br> THE ANDERSONS, INC., CARGILL, INCORPORATED, and JOHN/JANE DOES NOS. 1-50 <br><br><br> Defendants. | Case No.: 1:20-cv-04090 <br><br> Honorable Robert W. Gettleman <br><br> Magistrate Judge Keri L. Holleb Hotaling <br><br> **REDACTED VERSION** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF PROFESSOR JUSTIN McCRARY

Date: March 27, 2024

**LOWEY DANNENBERG, P.C.**

Vincent Briganti (*pro hac vice*)
Raymond P. Girnys (*pro hac vice*)
Noelle Forde (*pro hac vice*)
Charles Kopel (*pro hac vice*)
44 South Broadway
White Plains, New York 10601
Tel: (914) 997-0500
Email: vbriganti@lowey.com
rgirnys@lowey.com
nforde@lowey.com
ckopel@lowey.com

**KIRBY McINERNEY LLP**

Anthony F. Fata
Anthony E. Maneiro
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Tel.: (312) 767-5180
Email: afata@kmllp.com
amaneiro@kmllp.com

David E. Kovel (*pro hac vice*)
Karen M. Lerner (*pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Tel.: (212) 371-6600
dkovel@kmllp.com
klerner@kmllp.com

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

STATEMENT OF RELEVANT FACTS ............................................................... 1

LEGAL STANDARD............................................................................................. 7

ARGUMENT .......................................................................................................... 8

I.      Professor McCrary is Unqualified to Offer an Opinion in this
Wheat Futures and Options Market Manipulation Class Action ............................ 8

II.     Professor McCrary's Opinions Are Not Reliable .................................................. 10

      A.     Professor McCrary's Criticisms of Dr. Pirrong's Methodology
Lack a Scientific Basis.................................................................................. 11

      B.     The Only Quantitative Work Professor McCrary Does Perform is Based
on Data that He has Never Used Prior to this Litigation ........................... 13

III.    Professor McCrary's Opinions Are Not Relevant ................................................. 14

CONCLUSION..................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baxter Int'l, Inc. v. Becton, Dickinson & Co.*,
    622 F.Supp.3d 725 (N.D. Ill. 2022) ........................................................................ 8

*Bd. of Trade of City of Chicago v. S.E.C.*,
    187 F.3d 713 (7th Cir. 1999) ................................................................................... 9

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
    214 F.Supp.2d 530 (D. Md. 2002) ......................................................................... 10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................................................................. 1, 7

*Downing v. Abbott Labs.*,
    48 F.4th 793 (7th Cir. 2022) .................................................................................... 8

*FCStone Fin., Inc. v. Jacobson*,
    No. 19 Civ. 1438, 2019 WL 2356989 (N.D. Ill. June 4, 2019) ................................ 9

*Goodwin v. MTD Prods., Inc.*,
    232 F.3d 600 (7th Cir. 2000) ................................................................................... 8

*Gopalratnam v. Hewlett-Packard Co.*,
    877 F.3d 771 (7th Cir. 2017) ................................................................................... 7

*Hubbs v. Big Lots Stores, Inc.*,
    No. 15 Civ.01601 JAK (ASx), 2019 WL 12536593 (C.D. Cal. July 2, 2019) ........ 11

*In re Broiler Chicken Grower Litig.*,
    No. 6:17 Civ. 00033-RJS, 2018 WL 10517621 (E.D. Okla. Mar. 26, 2018) ........... 5

*In re Term Commodities Cotton Futures Litig.*,
    12 Civ. 5126 (ALC), 2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020) ....................... 3

*Kraft Foods Global, Inc. v. United Egg Producers, Inc.*,
    No. 11 Civ. 8808, 2023 WL 6248473 (N.D. Ill. 2023) ........................................... 11

*Lapsley v. Xtek, Inc.*,
    689 F.3d 802 (7th Cir. 2012) ................................................................................. 10

*Lewis v. CITGO Petroleum Corp.*,
    561 F.3d 698 (7th Cir. 2009) ................................................................................... 7

*Life Spine, Inc. v. Aegis Spine, Inc.*,
  No. 19 Civ. 7092, 2023 WL 2933044 (N.D. Ill. Apr. 13, 2023) ............................................. 11

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ................................................................................................. 13

*Moehrl v. Nat'l Ass'n of Realtors*,
  No. 19 Civ. 01610, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023)…………………………..11

*Myers v. Ill. Central R. Co.*,
  629 F.3d 639 (7th Cir. 2010) .................................................................................................. 8

*Naeem v. McKesson Drug Co.*,
  444 F.3d 593 (7th Cir. 2006) .................................................................................................. 8

*Obrycka v. City of Chi.*,
  No. 07 Civ. 2372, 2012 WL 4092653 (N.D. Ill. Sept. 17, 2012).......................................... 13

*Payne v. Wyeth Pharm., Inc.*,
  No. 2:08 Civ. 119, 2008 WL 5586824 (E.D. Va. Nov. 17, 2008) .......................................... 10

*Ploss v. Kraft Foods Grp., Inc.*,
  637 F.Supp.3d 561 (N.D. Ill. 2022) ......................................................................................... 3

*Porter v. Whitehall Labs., Inc.*,
  9 F.3d 607 (7th Cir.1993) ...................................................................................................... 14

*Salgado by Salgado v. Gen. Motors Corp.*,
  150 F.3d 735 (7th Cir. 1998) ................................................................................................. 11

*Scott v. Chipotle Mex. Grill, Inc.*,
  315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................................. 14

*U.S. E.E.O.C. v. Rockwell Int'l Corp.*,
  60 F.Supp.2d 791 (N.D. Ill. 1999) .................................................................................. 13, 15

*Van v. Ford Motor Co.*,
  332 F.R.D. 249 (N.D. Ill. 2019)............................................................................................. 13

*Winters v. Fru-Con, Inc.*,
  498 F.3d 734 (7th Cir. 2007) ................................................................................................... 7

**Rules**

FED. R. EVID. 702 ..................................................................................................... 1, 7, 8, 10

FED. R. EVID. 702(c)............................................................................................................ 12

**Other Authorities**

*Reference Manual on Scientific Evidence* 211, 251...................................................... 12

## INTRODUCTION

Plaintiffs move to exclude the report, testimony, and opinions of Defendants' proposed class certification expert, Professor Justin McCrary ("Professor McCrary") pursuant to FED. R. EVID. 702 ("Rule 702") and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).[1]

Defendants offer Professor McCrary in opposition to Plaintiffs' motion for class certification and to rebut the opinions of Plaintiffs' expert, Dr. Craig Pirrong. Professor McCrary, however, lacks the requisite academic and professional experience to serve as an expert in this Commodity Exchange Act and antitrust class action that alleges Defendants' manipulation of Chicago Board of Trade ("CBOT") wheat futures and options contracts.

## STATEMENT OF RELEVANT FACTS

This action concerns Defendants' agreement to manipulate the CBOT soft red winter ("SRW") wheat futures and options market through their uneconomic registration of 10 million bushels of SRW wheat (or 2,000 shipping certificates) on November 29, 2017—at the start of the delivery period for the December 2017 CBOT SRW wheat futures contract.

**<u>Plaintiffs' Class Certification Expert – Dr. Craig Pirrong</u>**. Plaintiffs retained Dr. Craig Pirrong to provide expert testimony in support of their motion for class certification.[2] Dr. Pirrong is a Professor of Finance at the Bauer College of Business of the University of Houston.[3] He received his bachelor's degree, a master's degree, and a PhD from the University of Chicago.[4] He has written extensively on commodity futures markets in numerous scholarly journals, including

---

[1] Defendants are The Andersons, Inc. ("TAI") and Cargill Incorporated ("Cargill," together "Defendants").

[2] *See* Declaration of Raymond P. Girnys, Ex. 1, Expert Report of Dr. Craig Pirrong (Aug. 25, 2023), at ¶ 7. "Ex. __" refers to this Declaration.

[3] *See id.* ¶ 4.

[4] *See id.* ¶ 1, Ex. B.

twelve (12) peer-reviewed articles and a book on commodity manipulation.[5] He has served as an expert in many capacities, including as the primary author of a study commissioned by the CBOT, as a consultant with commodity exchanges internationally, as an economics expert for the U.S. Commodity Futures Trading Commission ("CFTC"), and as an expert in various cases related to market manipulation in courts across the country.[6]

In this case, Dr. Pirrong constructed a causal theory by drawing on an extensive and well-developed body of peer-reviewed economic research, and then tested the implications of the causal theory using a widely recognized empirical method—the event study.[7] Dr. Pirrong carefully developed and applied the event study methodology that shows that the price movements in the December 2017 and March 2018 CBOT SRW wheat futures and options contracts observed between November 30, 2017 and December 14, 2017 (the "Class Period") were unlikely to have occurred absent Defendants' conduct.[8] Specifically, Dr. Pirrong concluded that the economic evidence indicates that Defendants—by, among other things, satisfying the cash market demands of major consumers of wheat in the Toledo area and registering and delivering 2,000 shipping certificates against the December 2017 SRW wheat futures contract—caused artificiality in December 2017 and March 2018 SRW wheat futures contract prices.[9] Dr. Pirrong also performed a theory of storage analysis, which similarly demonstrates that Defendants' conduct lowered the

---

[5] *See id.* ¶ 1.

[6] *See id.* ¶¶ 1-4.

[7] *See id.* ¶¶ 84-105; Ex. 2, Expert Rebuttal Report of Dr. Craig Pirrong (Feb. 7, 2024) ¶¶ 88, 22-23.

[8] *See* Ex. 1 ¶¶ 106-37. ████████████████████████████████████
████████████████████████████████████ . *See id.* ¶ 115; Ex. 2 ¶ 28.

[9] *See* Ex. 1 ¶¶ 30-52, 138.

futures price and also shows that the December 2017–March 2018 SRW wheat futures spread was artificially wider, caused by Defendants' conduct and not by fundamental factors.[10]

Dr. Pirrong's Report demonstrates that Defendants' conduct closely fits the theoretical model of manipulation of the commodity delivery process by a large short position holder described in his 1993 peer-reviewed article, Stephen Craig Pirrong, *Manipulation of the Commodity Futures Market Delivery Process*, 66 J. OF BUS. 335 (1993).[11] The Report also analyzes

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████[12] The event study methodology Dr. Pirrong employed here has already survived *Daubert* motions in two futures manipulation class actions. *See Ploss v. Kraft Foods Grp., Inc.*, 637 F.Supp.3d 561, 571-78 (N.D. Ill. 2022) (concerning CBOT wheat futures); *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC), 2020 WL 5849142, at *15-24 (S.D.N.Y. Sept. 30, 2020) (concerning cotton futures).[13]

As a result, Dr. Pirrong concluded that: (1) Defendants had market power, (2) Defendants caused December 2017 and March 2018 SRW wheat futures contract prices to artificially decline and the December 2017–March 2018 SRW wheat futures spread price to widen, and (3) there is a common methodology to determine Class member damages based on common evidence.[14]

---

[10] *See id.* ¶¶ 139-55; Ex. 2 ¶¶ 58-65.

[11] *See* Ex. 1 ¶¶ 75-83, 175-83.

[12] *Id.* ¶ 184.

[13] Unless otherwise indicated, citations and internal quotation marks are omitted.

[14] *Id.* ¶ 11.

**Defendants' Class Certification Expert – Professor Justin McCrary**. Defendants offer Professor McCrary to rebut the opinions and testimony of Dr. Pirrong. Professor McCrary is an ███████████████████████████████████████████████████████████████████ and a professor at the Law School at Columbia University.[15] Professor McCrary is not an expert in commodities futures trading or in commodities manipulation generally: he has *never* published any scholarship on commodities markets or the theory of storage.[16]

Nor has Professor McCrary ███████████████████████████████████████████[17] And despite serving as a testifying expert in dozens of cases since 2018, Professor McCrary has ████ ████████████████████████████████████████████████████████████████[18] ████████████████████████████████████████████[19] ████████████████████████████[20]

And Professor McCrary has █████████████████████████████████ ████████████████████████████████████████████████

---

[15] *See* Ex. 42, Expert Report of Prof. Justin McCrary (Dec. 20, 2023) ¶ 1.

[16] *See id.* at App'x C (████████████████████████████████████████████████ ████████); Ex. 43, Deposition Transcript of Justin McCrary (Jan. 26, 2024) at 87:2-88:14 (████████████████████████████████████████████████████, 108:10-109:12 (████████████████████████████████████████████), 241:21-242:10 (██████████████████████████████████), 295:2-296:25 (██████████████████████). *See also id.* at 218:19-219:13 (████████████████████████).

[17] Ex. 43 at 293:16-294:6.

[18] *Id.* at 97:12-98:13.

[19] *Id.* at 107:8-14.

[20] *Id.* at 284:21-285:4. Although Professor McCrary ██████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████

█████████[21] ████████████████████[22] ████████████████████[23] ████[24]
, .[25] Indeed, prior to this engagement, Professor McCrary had ███████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████.[26]

Professor McCrary's lack of discipline-specific expertise was evident during his January 26, 2024 deposition. He ████████████████████████████████
███████[27] █████████[28] ████████████[29] and ████████████[30] Professor McCrary's
████████████ also left doubts as to the extent that the Report were his opinions and calculations rather than those of his contracted support staff █████████████.[31] Even Defendants' attempt to ████████████████████████████████
████████ fall woefully short of undoing the inescapable conclusion that Professor McCrary has no relevant experience or qualifications to serve as an expert in this matter.[32]

---

[21] Ex. 43 at 88:15-17.

[22] *Id.* at 88:18-20.

[23] *Id.* at 89:23-90:2.

[24] *Id.* at 92:11-14.

[25] *Id.* at 92:15-17.

[26] *Id.* at 33:3-19, 249:20-250:8.

[27] *Id.* at 18:17-21.

[28] *Id.* at 18:22-19:2.

[29] *Id.* at 31:24-32:8.

[30] *Id.* at 43:22-44:5.

[31] *See id.* at 65:23-69:14 (████████████████████████████████████
████████████████████████████).

[32] *Compare id.* at 289:12-290:6 (████████████████████████████████████),
*with id.* at 294:11-21 (████████████████████████████).

Nevertheless, Professor McCrary was assigned to ████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████[33] Professor McCrary asserts that Dr. Pirrong's event study and theory

of storage analyses █████████████████████████████████[34]

But Professor McCrary ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████[35] ████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████ into his own analysis of the purported flaws in Dr. Pirrong's

work, or whether they change Dr. Pirrong's conclusions. Critically, during his deposition,

Professor McCrary ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████[36] ██████████████████████████████████[37]

████████████████████████████████████████████████████████████████████

████████████████████[39] ████████████████████████[40] ████████████████████

████████[41] Because Professor McCrary failed to engage in any actual way with his own

---

[33] Ex. 42 ¶ 10.

[34] *See, e.g.*, *id.* ¶¶ 80, 185.

[35] *Id.* ¶ 80 n.114.

[36] Ex. 43 at 155:5-10.

[37] *Id.* at 160:17-163:10.

[38] *Id.* at 169:9-170:16.

[39] *Id.* at 201:13-202:2.

[40] *Id.* at 202:3-20.

[41] *Id.* at 203:3-16.

critique, he lacks an empirical basis to assert that Dr. Pirrong omitted relevant fundamental factors.[42]

Finally, Professor McCrary ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████████ [43]

## LEGAL STANDARD

As the proponents of Professor McCrary's testimony, Defendants bear the burden of showing that the testimony is admissible under FED. R. EVID. 702. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). To be admissible, expert testimony must be both relevant and reliable. *See Daubert*, 509 U.S. at 589. The district court serves as the gatekeeper to ensure that expert testimony meets both requirements. *Id.* at 597; *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (same). Performance of this gatekeeping role requires consideration of the following three factors: "[1] whether the witness is qualified; [2] whether the expert's methodology is scientifically reliable; and [3] whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017).

These factors should be applied in the specific context of a particular discipline and a particular case. The qualification requirement does not turn on "whether an expert witness is

---

[42] In addition to being baseless, Professor McCrary's opinions are also incorrect. In his Rebuttal Report, Dr. Pirrong demonstrates how his event studies and theory of storage analysis █████████████ ███████████. *See* Ex. 2 ¶¶ 28, 30. The Rebuttal Report also responds to additional contentions made by Professor McCrary that are not specifically addressed in this motion. With this motion, Plaintiffs make no concessions that any of Professor McCrary's opinions, if admitted, would be entitled to great weight; instead they seek only to highlight Professor McCrary's lack of qualifications and the basic methodological flaws that render his opinions unreliable and irrelevant.

[43] *See, e.g.,* Ex. 43 at 188:8-14 (████████████████████████████████████████ ████████████████████), 225:13-226:10 (████████), 189:2-19 (████████ ████████████████████), 243:11-18 (████████████████████████████████).

qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question." *Myers v. Ill. Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The reliability requirement ensures that an expert's work "uses the methods of the discipline." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006). And the relevance requirement concerns whether the expert witness has "something useful to say about the particular circumstances at issue." *Downing v. Abbott Lab'ys*, 48 F.4th 793, 810 (7th Cir. 2022).

Professor McCrary fails each factor, and his opinions should be excluded.

## ARGUMENT

### I. Professor McCrary is Unqualified to Offer an Opinion in this Wheat Futures and Options Market Manipulation Class Action

Under *Daubert*, expert qualification in one subject matter area does not extend to other areas. *See Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, 622 F.Supp.3d 725, 735 (N.D. Ill. 2022) (opinions outside of a witness's "area of expertise" are "unreliable and thus incapable of passing muster under [*Daubert*] and Federal Rule of Evidence 702"); *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (holding that a trained mechanical engineer was not qualified to provide expert testimony on matters unrelated to engineering).

This case concerns Defendants' manipulation of the CBOT wheat futures and options market through their uneconomic registration of 10 million bushels of SRW wheat during the December 2017 delivery period. Professor McCrary's



[44]

---

[44] Ex. 42 ¶ 1.

The objective markers of subject matter expertise in academic economics—publications, teaching, expert testimony, consulting work—tell an unmistakable story of experience in a *different area*, namely the U.S. stock and options markets, not the futures market.[45] As detailed above, Professor McCrary has *not* ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████. This matters because "securities and commodity futures and options are distinct—so distinct that Congress has erected different regulatory regimes and enforcement agencies for the different financial products." *INTL FCStone Fin., Inc. v. Jacobson*, No. 19 Civ. 1438, 2019 WL 2356989, at *7 (N.D. Ill. Jun. 4, 2019); *see also Bd. of Trade of City of Chicago v. S.E.C.*, 187 F.3d 713, 716 (7th Cir. 1999) ("Congress allocated securities and options on securities to exchanges regulated by the SEC, futures and options on futures to boards of trade regulated by the CFTC").

The difference between the equities market, in which Professor McCrary claims expertise, and the commodity futures market, ██████████████████████, is especially heightened in this case, where the allegations extend beyond the futures exchange itself, and require an understanding of events, practices, and transactions in the underlying commodity market for SRW wheat.

---

[45] *See, e.g.*, Ex. 43 at 109:6-8 ████████████████████████████████████████
████████████████████████ , 242:3-6
████████████████████████████████████████████████████████████ .

Professor McCrary's lack of familiarity with basic industry terminology (*e.g.*, ███ ███ [46] ███ [47] ███ [48] and ███) [49] similarly indicates that he lacks the requisite qualifications to provide expert testimony in this case. *See Payne v. Wyeth Pharm., Inc.*, No. 2:08 Civ. 119, 2008 WL 5586824, at *4 (E.D. Va. Nov. 17, 2008) (expert excluded who was "unfamiliar with common terminology and practices"); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F.Supp.2d 530, 533 (D. Md. 2002) (expert excluded who "was unfamiliar with basic terminology and concepts used by economists who deal with antitrust issues").

Professor McCrary's lack of baseline expertise in commodity futures markets, agricultural commodity futures markets, wheat futures markets, or the underlying SRW wheat cash market requires exclusion.

## II.     Professor McCrary's Opinions Are Not Reliable

For an expert opinion to be considered "reliable" under Rule 702, it must be "based on sufficient facts or data," it must be "the product of reliable principles and methods," and the opinion must "reflect[] a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702. "The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).

---

[46] *Id.* at 18:17-21.

[47] *Id.* at 18:22-19:2.

[48] *Id.* at 31:24-32:8.

[49] *Id.* at 43:22-44:5.

### A. Professor McCrary's Criticisms of Dr. Pirrong's Methodology Lack a Scientific Basis

At the heart of Professor McCrary's criticism of Dr. Pirrong's implementation of an event study and the theory of storage analysis is ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████. However, Professor McCrary's own failure to ground this assertion in ████████████████ ████████████████████████████████████████████████████████ means that it was not the product of the principles and methods of financial economics. As outlined above, Professor McCrary offered no testimony at all with respect to ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. *See supra* at p.6.

This leaves Professor McCrary as nothing more than a "sock puppet" with little independent substance supporting his criticisms of Dr. Pirrong. *See Kraft Foods Global, Inc. v. United Egg Producers, Inc.*, No. 11-cv-8808, 2023 WL 6248473, at *2 (N.D. Ill. 2023) ("An expert is not a lawyer's sock puppet."); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19 Civ. 01610, 2023 WL 2683199, at *5 (N.D. Ill. Mar. 29, 2023) ("Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology."). All expert reports "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions," *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998), and rebuttal reports are no exception. *See Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 Civ. 7092, 2023 WL 2933044, at *9 (N.D. Ill. Apr. 13, 2023) (excluding opinions of a rebuttal expert on the basis of unsound methodology); *Hubbs v. Big Lots Stores, Inc.*, No. 15 Civ. 01601, 2019 WL 12536593, at *3 (C.D. Cal. Jul. 2, 2019) ("A rebuttal report cannot be limited to conclusory opinions that the opposing expert is wrong. A rebuttal expert witness must lay the foundation for his opinions.").

Further, as Dr. Pirrong explained in his Rebuttal Report, Professor McCrary's ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[50] Specifically,

Professor McCrary acknowledges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[51] Professor McCrary contends, however, that

Dr. Pirrong's event study ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[52] This characterization is

foreclosed by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ — Freedman and Kaye's "Reference Guide

on Statistics."[53] "A regression model attempts to combine the values of certain variables (the

independent variables) to get expected values for another variable (the dependent variable). The

model can be expressed in the form of a regression equation." Freedman & Kaye, *supra* at 260.[54]

In light of this background, Professor McCrary is plainly out of step with accepted scientific

principles when he asserts that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This divergence

from "reliable principles and methods" requires exclusion. Fed. R. Evid. 702(c).

---

[50] Ex. 2 ¶¶ 14-33.

[51] Ex. 42 ¶ 77.

[52] *Id.* ¶ 84. Dr. Pirrong's Rebuttal Report further explains that Professor McCrary's insistence that a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 ¶¶ 16-18.

[53] *See* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Similarly, event studies are widely utilized to analyze causation, including in the context of commodity market manipulation. *See, e.g.*, Ex. 1 ¶¶ 89-104 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

[54] *Compare id.* with Ex. 1 ¶ 106 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### B. The Only Quantitative Work Professor McCrary Does Perform is Based on Data that He has Never Used Prior to this Litigation

Professor McCrary spends a substantial portion of his report claiming that ███████

███████████████████████████████████[55] To perform the calculations necessary for

these portions of his analysis, Professor McCrary utilized ██████████████████████

████ ████████████████████,[57] ██████████████,[58] and ██████████████████

███[59]—all of which are categories of data that he had *never* worked with prior to this

engagement.[60]

Even if Professor McCrary were qualified to offer legal and economic opinions on this

subject generally (he is not) the Court cannot rely upon Professor McCrary's "expert" gander at

forms of data that are entirely new to him. *See U.S. E.E.O.C. v. Rockwell Int'l Corp.*, 60 F.Supp.2d

791, 795-96 (N.D. Ill. 1999) (excluding expert that included data from an ergonomist report, where

the proffered expert "had never even seen an ergonomist report prior to receiving" these data)

(Gettleman, J.); *Obrycka v. City of Chi.*, No. 07 Civ. 2372, 2012 WL 4092653, at *4 (N.D. Ill.

Sept. 17, 2012) ("[Expert] testified at his deposition that he has never conducted an audit, statistical

study, or field study of a police department for any relevant organizational issues outside of

budgeting…As such, [he] lacks foundation for his qualitative conclusions").

---

[55] Ex. 42 ¶ 141.

[56] *Id.* ¶ 167.

[57] *Id.* ¶¶ 170-71.

[58] *Id.* ¶¶ 141-44, 191-92.

[59] *Id.* ¶ 193.

[60] Ex. 43 at 33:3-19, 249:20-250:8.

### III.    Professor McCrary's Opinions Are Not Relevant

"Expert testimony which does not relate to an issue in the case is not relevant and, ergo nonhelpful." *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 613 (7th Cir.1993). This standard of helpfulness is no less applicable to rebuttal witnesses. *See Scott v. Chipotle Mex. Grill, Inc.*, 315 F.R.D. 33, 47 (S.D.N.Y. 2016) ("As a rebuttal expert, [his] role is to undermine the soundness of the plaintiffs' experts' conclusions. Still, his testimony must be reliable and helpful to the trier of fact.")

Professor McCrary's criticisms of Dr. Pirrong's Report fail the helpfulness test, because, as noted above, *supra* at p. 6, 11-12, their focus on ███████████████████████
█████████████████████████████████████████████.[61] Professor McCrary simply parrots his clients' talking points regarding ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████, and offering no relevant analysis of his own to tie these talking points to the facts of the case. For instance:

1) *Compare* Ex. 42 ¶ 203 (███████████████████████████████
████████████████████████████████████████████
████████████████████████), *with* Ex. 43 at 201:6-202:2 (████████████
████████████████████████████████████████████
████████████████████████████);

---

[61] *See, e.g.,* Ex. 42 ¶¶ 80 ████████████████████████████████████
██████████████████████████████), 185 ██████████████████████████████
████████████████████████).

14

2) *Compare* Ex. 42 ¶ 63 n.77 ( ███████████████████████████

███████████████████████████ ), *with* Ex. 43 at 202:3-20 ( ██████████

██████████████████████████████████████

█████████████ ); and

3) *Compare* Ex. 42 ¶ 186 ( ██████████████████████████

██████████████████████████████████████

████ ), *with* Ex. 43 at 203:3-16 ( ███████████████████

██████████████████████████████████████

███████████████ ).

And so on. Expert opinions based strictly on background are "too general to be of use." *Rockwell*,

60 F.Supp.2d at 797-98 (in employment case, excluding expert who "failed to take into account

the specific job market in the geographical area to which the Claimants had access"); *Kraft Foods*

*Global, Inc.*, 2023 WL 6248473, at *2 ("[i]f an expert merely reads the evidence, and offers his

spin on the facts, that expert isn't telling the jury more than it already knows. The expert must

bring something to the table that the jury doesn't already have."). Put differently, if Professor

McCrary sought to illustrate how Dr. Pirrong's analysis of the specific market at issue is not

reliable, he failed, because ████████████████████████████ .

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court exclude the Report and

opinions of Professor McCrary.

Dated: March 27, 2024

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

**KIRBY McINERNEY LLP**

*/s/ Raymond Girnys*
Vincent Briganti (*pro hac vice*)
Raymond P. Girnys (*pro hac vice*)
Noelle Forde (*pro hac vice*)
Charles Kopel (*pro hac vice*)
44 South Broadway
White Plains, New York 10601
Tel: (914) 997-0500
Email: vbriganti@lowey.com
rgirnys@lowey.com
nforde@lowey.com
ckopel@lowey.com

*/s/ Anthony Maneiro*
Anthony F. Fata
Anthony E. Maneiro
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Tel.: (312) 767-5180
afata@kmllp.com
amaneiro@kmllp.com

David E. Kovel (*pro hac vice*)
Karen M. Lerner (*pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Tel.: (212) 371-6600
dkovel@kmllp.com
klerner@kmllp.com

*Proposed Co-Lead Counsel*

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF parties of interest.

I further certify that I have served unredacted copies of the foregoing via email to the following:

EWheeler@foley.com

KGehl@foley.com

THansfield@foley.com

JMcKeown@foley.com

melissa.coates@morganlewis.com

nathan.bennett@morganlewis.com

heather.nelson@morganlewis.com

michael.philipp@morganlewis.com

zachary.johns@morganlewis.com

kenneth.kliebard@morganlewis.com

*/s/ Raymond Girnys*
Raymond Girnys