IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD DENNIS, PORT 22, LLC., and MICHAEL GLASS | ) ) ) | |
| Plaintiffs, | ) ) | No. 20 C 4090 |
| v. | ) ) | Judge Robert W. Gettleman |
| THE ANDERSONS, INC. and CARGILL, INC. | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

In a motion still pending before the court, Richard Dennis, Port 22, LLC, and Michael Glass (collectively "plaintiffs") seek to proceed on behalf of a class of similarly situated wheat futures market participants on claims of market manipulation under the Commodity Exchange Act, violations of the Sherman Antitrust Act, and unjust enrichment and restitution/disgorgement under Illinois law, against The Andersons, Inc. and Cargill, Inc. (collectively "defendants"). Magistrate Judge Keri L. Holleb Hotaling previously issued a memorandum opinion and order (Doc. 188) primarily denying[1] defendants' motion to exclude the testimony of plaintiffs' class certification expert Dr. Craig Pirrong (Doc. 143). Currently before the court is defendants' objection to that order (Doc. 194). For the reasons explained below, defendants' objection is denied.

**BACKGROUND**

Plaintiffs assert Commodity Exchange Act and Sherman Antitrust Act claims, alleging that defendants, who were supposed competitors, operated multiple grain storage warehouses in

---

[1] Judge. Holleb Hotaling's opinion granted defendant's motion in small part regarding Dr. Pirrong's statements in paragraphs 49, 184, and 202 because they "cross the line into improper state-of-mind testimony." Doc. 188 at 22.

1

Ohio and collaborated to manipulate prices of soft red winter wheat ("SRW wheat") futures and options contracts on the Chicago Board of Trade ("CBOT").

Plaintiffs allege that defendants sold SRW wheat to the major purchasers in October and November 2017 to suppress demand for physical SRW wheat. Then, on November 29, 2017, The Andersons, Inc. registered for delivery two thousand certificates of CBOT December 2017 SRW wheat. This registration (falsely and intentionally, plaintiffs allege) signaled that The Andersons, Inc. would sell ten million bushels of physical SRW wheat to parties holding long positions in December 2017 SRW wheat futures. Consequently, December 2017 SRW wheat futures prices decreased and the spread between the December 2017 and March 2018 SRW wheat futures contracts widened. Defendants later collectively repurchased some of the shipping certificates The Andersons, Inc. had delivered at the decreased prices. Plaintiffs allegedly transacted in December 2017 and March 2018 SRW wheat futures and lost money because of the decreased prices and widened spread caused by the scheme.

With certain exclusions unnecessary to enumerate here, plaintiffs seek to certify a class of individuals or entities who purchased one of three positions in CBOT SRW wheat—(1) a long position in CBOT SRW wheat December 2017 or March 2018 futures contracts; (2) a long position in CBOT call options on CBOT SRW wheat March 2018 futures contracts; or (3) a short position in CBOT put options on CBOT SRW wheat March 2018 futures contract—and then liquidated the position through either an offsetting market transaction between November 30, 2017, and December 14, 2017, or a sale of a long position in a CBOT March 2018 futures contract that was initiated prior to December 14, 2017, but closed after that date.

In their class certification filings, plaintiffs rely upon the initial and rebuttal reports of their expert, Dr. Craig Pirrong ("Pirrong"), to establish requirements for class certification,

including typicality and predominance of common issues over individual issues. Pirrong opines that defendants' manipulation of December 2017 and March 2018 SRW wheat futures injured plaintiffs on a class-wide basis. Pirrong estimates class-wide damages and proposes a methodology for determining individual damages. Defendants challenged the reliability of Pirrong's study through the report of their expert, Professor Justin McCrary.

## LEGAL STANDARD

A district court's review of any non-dispositive decision made by a magistrate judge is governed by Fed. R. Civ. P. 72(a), which states: "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." The clear error standard in Rule 72(a) is deferential; "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." Weeks v. Samsung Heavy Industries Co., 126 F.3d 926, 943 (7th. Cir. 1997). In the Seventh Circuit, a clearly erroneous decision is one that "strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish." S Industries, Inc. v. Centra 2000, Inc., 249 F.3d 625, 627 (7th Cir. 2001).

"When an expert's report or testimony is 'critical to class certification,'" a court must "make a conclusive ruling on any challenge to that expert's qualifications or submissions before it may rule on a motion for class certification." Messner v. Northshore Univ. HealthSys., 669 F.3d 802, 812 (7th Cir. 2012) (quoting Am. Honda Motor Co. v. Allen, 600 F.3d 813, 815-16 (7th Cir. 2010)). Accordingly, because Pirrong's report is critical to class certification, the court must first rule on defendants' motion to exclude before ruling on plaintiffs' pending class certification motion.

The rejection of expert testimony has been "the exception rather than the rule" since Daubert was decided. Committee Notes on Rules—2000 Amendment, Fed. R. Evid. 702. In ruling on defendants' motion to exclude, the magistrate judge evaluated: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." Gopalratnam v. Hewlett-Packard Co., 877 F.3d 771, 779 (7th Cir. 2017) (describing the inquiry required under Fed. R. Evid. 702 and Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)). A trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). When a court evaluates the reliability of expert testimony, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595 (1993). This court will review the magistrate judge's ruling for clear error in the application of these Rule 702 principles.

## DISCUSSION

Defendants argue that the magistrate judge's order contained the following four clearly erroneous conclusions. First, the magistrate judge declined to exclude the March 2018 portion of Pirrong's event study, which defendants allege lacks sufficient statistical significance. Second, the magistrate judge declined to exclude Pirrong's ipse dixit assumption that defendants' manipulation caused a constant level of price artificiality that persisted for three months. Third, the magistrate judge found that the December 2017 portion of Pirrong's event study is admissible despite the high rate of false positives that it produces. Fourth, the magistrate determined that Pirrong's linear programming ("LP") damages model, which defendants contend is neither reliable nor helpful to a factfinder, is admissible. With the deferential standard of review

4

discussed above in mind, the court will review the magistrate judge's order for clear error on each of these four bases.

1. Statistical significance of March 2018 event study

Pirrong's expert report includes an event study, a regression analysis that uses specified control variables to estimate the daily market price of SRW and then compares those estimates to the prices observed in the market. An event study is used to determine the direction and magnitude of the effect of an unspecified variable, here, the alleged market manipulation.

Pirrong's event study contains p-values associated with the cumulative residual on each day of the study. A residual is the difference between the observed value (here, the actual daily market price) and the estimated value (here, the daily market prices estimated by the control variables). The cumulative residuals used in Pirrong's event study are simply the sum of each day's residual and all the residuals that came before it within the period studied. A p-value gives the probability of observing the residual due to random variance. For example, a p-value of .05 indicates that there is a 5% chance that the residual observed is due to random variance. A residual with a p-value of .05 or less is said to be "statistically significant at the 5% level," a residual with a p-value of .10 or less is said to be "statistically significant at the 10% level," and so forth. The p-values in Pirrong's event study range from as low as 0.00 to as high as 0.43.

Because many of the p-values in Pirrong's event study exceed commonly used thresholds of statistical significance (such as the 1%, 5%, and 10% thresholds), defendants argued before the magistrate judge that Pirrong's entire event study is unreliable. After carefully considering the issue, the magistrate judge was "unconvinced that all of [Pirrong's] results should be excluded due to some p-values above 0.05, particularly where seven of eleven days (November

5

30 through December 8, 2017) within the December 2017 SRW wheat contracts regression analysis returned p-values with statistical significance at the five percent level." Ultimately, the magistrate judge concluded that "[d]efendants' arguments go to the weight, rather than the admissibility, of the regression study results."

Defendants advance the same statistical significance arguments before this court, contending that the magistrate judge's conclusions constitute clear error. Plaintiffs respond that the magistrate judge properly fulfilled her role as a "gatekeeper" under Rule 702 and Daubert, and primarily dedicate their briefing to citing authority that supports the magistrate judge's order.

The magistrate judge's conclusion that Pirrong's event study is sufficiently reliable was not clearly erroneous. A court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., 526 U.S. at 152. In this particular case, it is reasonable that the magistrate judge, like many of our sister courts, declined to use statistical significance at the five percent level, or any other bright line threshold, as a proxy for reliability, and thus the admissibility, of Pirrong's entire event study. See, e.g., In re Testosterone Replacement Therapy Prod. Liab. Litig., No 17-cv-3775, 2023 WL 7183216, at *3 (N.D. Ill. Nov. 1, 2023) (holding the better approach is "to avoid creating a bright-line rule and to instead examine the different bases for the experts' opinions"); In re Chi. Bridge & Iron, 2020 WL 1329354, at *4-5 (S.D.N.Y. March 23, 2020) (discussing cases and concluding that "[n]o hard and fast rule dictates a cutoff of a 5% significance level to prove price impact in a securities fraud case, nor should one."); In re High-Tech Emp. Antitrust Litig., No. 11-CV-02509-LHK, 2014 WL 1351040, at *15 (N.D. Cal. Apr. 4, 2014) (collecting cases rejecting the use of statistical significance bright lines for admissibility).

Plaintiff's theory of this case is that a discrete event—the registration of two thousand

certificates of CBOT December 2017 SRW wheat on November 29, 2017, (after defendants had saturated the market through major SRW wheat sales in October and November) —drove the market price of December 2017 and March 2018 SRW wheat futures downward. Pirrong's event study uses a regression analysis to isolate the effect of this event from the innumerable other market factors—captured by the control variables—that determine the market price of SRW wheat futures.

The downward price impact of this discrete event would be easiest to pick out from the "noise" of other market factors right at the time of the event. As time passes and the other market factors continue to exert pressures on price, the manipulation event would become more difficult to pick out from the noise; what was first a bang fades into an echo. This is what Pirrong's event study shows. For December SRW wheat futures, the lowest, or most statistically significant, p-values occur on November 30, 2017, and the days immediately following it. Pirrong's conclusion that defendants' alleged market manipulation depressed prices in the December SRW wheat futures market is statistically robust.

For March SRW wheat futures, the same conclusion is considerably less statistically robust. Even on the first day after defendants' registration of two thousand certificates of CBOT December 2017 SRW wheat, the negative residual returns a p-value of 0.20. Given the mixed statistical robustness of the results of the event study, this court agrees with the magistrate judge that they are sufficiently reliable to be admissible. This court is not "left with the definite and firm conviction that a mistake has been made." Weeks, 126 F.3d at 943.[2]

---

[2] The court rejects defendants' argument that it was clear error for the magistrate judge to consider the event study as a whole instead of considering the March 2018 portion of the event study separately from the December 2017 portion. In their filings before the magistrate judge, defendants challenged the entire event study, and in their briefing before this court they concede as much. ("Defendants argued that the entire event study is unreliable"). Even if defendants did originally ask the court to analyze the March 2018 and December 2017 portions separately, defendants cite no authority supporting the proposition that a court is required to slice its analysis of an expert opinion in the way that a party advocates. It is the court and not the litigants that enjoy "considerable leeway in

2. Ipse dixit assumption that price artificiality in the commodities marketplace spanned three months at a fixed amount

Before the magistrate judge, defendants argued that Pirrong's conclusion that the March 2018 SRW wheat futures contract had a permanent, fixed, artificial price depression of 1.2¢ per bushel from December 14, 2017, to March 14, 2018, is unreliable because it is asserted with no empirical proof. Defendants renew that challenge here, arguing that Pirrong "is left only with his own word as to the existence of permanent price artificiality spanning three months in a marketplace where prices change every second of every day."

The magistrate judge determined that Pirrong "reviewed the identified records, performed studies, and applied his extensive experience in futures markets to reach" his conclusion that the 1.2¢ per bushel artificial price depression held through the period from December 14, 2017, to March 14, 2018. The record that the magistrate judge refers to differentiates this case form Clark v. Takata Corp., 192 F.3d 750 (7th Cir. 1999), which defendants primarily rely upon. Unlike in Clark, here, there is supporting research material on the record, such as the event study itself, explanations based on economic principles, and Pirrong's own academic work on the subject. Id. at 758. See Craig Pirrong, Manipulation of the Commodity Futures Market Delivery Process, 66 J. of Bus. 335 (1993) (analyzing the necessary and sufficient conditions for long and short traders to manipulate commodities futures prices at contract expiration).

While Pirrong's explanation of why the price artificiality would remain constant is open to dispute, a disputable explanation is different than no explanation. See Metavante Corp. v. Emigrant Sav. Bank, 619 F.3d 748, 761 (7th Cir. 2010) (contrasting ipse dixit from conclusions supported by explanation). Defendants remain free to maintain their challenge to the weight

---

deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., 526 U.S. at 152.

that Pirrong's conclusion should be afforded, but the magistrate judge was correct to deem it reliable.

3. False positives

Defendants argued before the magistrate judge that Pirrong's event study is unreliable because of the high rate of false positives it produces. A test for false positives takes Pirrong's model and applies it to time periods where there is no alleged market manipulation. A false positive occurs when a residual has a p-value below a specified threshold of statistical significance. Defendants' test for false positives employed a 43% threshold of statistical significance because that is the highest p-value reported for any day in Pirrong's event study. Using a high threshold of statistical significance yields a high rate of false positives. Here, it indicated that there was price manipulation on "85% of the days for which Plaintiffs do not claim manipulation." After carefully considering this issue, the magistrate judge concluded that "[b]ecause Defendants' false positives argument spins off from the p-values discussion and applies an across-the-board 43% threshold for statistical significance not adopted by Pirrong, the Court is disinclined to reach a different result here."

Defendants advance the same false positives argument here. The court finds that the magistrate judge's decision to admit the event study despite the high rate of false positives was correct. The 85% false positive rate reported by defendants comes from the application of an across-the-board 43% threshold for statistical significance that is not endorsed by Pirrong (and is obviously not endorsed by the defendants given their arguments on statistical significance). More troubling is the 19.66% false positive rate yielded by testing at a 5% level of statistical significance. The magistrate judge concluded that Pirrong's testimony is "closer to shaky than

9

unreliable," Kleen Prods. LLC v. Int'l Paper, No. 10-cv-5711, 2017 WL 2362567, at *6 (N.D. Ill. May 31, 2017). Consequently, defendant's argument goes to the weight, and not the admissibility, of Pirrong's conclusion.

4. Linear programming ("LP") damages model

First, defendants renew their argument that Pirrong's LP damages model is unreliable because it relies on an estimate of artificiality generated by the event study to calculate a range of aggregate damages for the class members. The reliability of the use of a constant 1.2¢ artificiality estimate is already addressed above.

Second, as the magistrate judge notes throughout her opinion, defendants' attack the output and not the methodology of Pirrong's estimation of a theoretical range of possible damages. See Anderson v. Raymond Corp., 61 F.4th 505, 510-11 (7th Cir. 2023) (explaining that the inquiry on whether an expert's opinion is reliable "focuses on the expert's methodology, not whether we agree with his conclusion.").

Third, defendants argue that the LP damages model is not helpful to the finder of fact because it "estimates a theoretical $20 million range of possible damages" and "provides no means for the trier of fact to estimate where in that broad range a reasonable, or probable, estimate of damages falls." The magistrate judge correctly concluded that "the Court is not seeking to calculate actual damages" at the class certification stage. Instead, plaintiffs must show that "proof of the damages caused by the scheme will either fail or succeed on a class-wide basis." Ploss v. Kraft Foods Group, Inc., 431 F. Supp. 3d 1003, 1018 (N.D. Ill. 2020). The court agrees with the magistrate judge that Pirrong's LP model is sufficiently helpful and reliable to be admissible.

## CONCLUSION

For the reasons explained above, defendants' objection to the order denying in part defendants' motion to exclude testimony of plaintiffs' class certification expert Dr. Craig Pirrong (Doc. 194) is denied. The parties are directed to file a joint status report by January 6, 2025, suggesting a briefing schedule on the pending motion for class certification.

                **ENTER:**

                Robert W. Gettleman
                **United States District Judge**

**DATE:   December 17, 2024**